1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   CHARLIE WHITNEY,              | No. 1:15-CV-03016-MKD

8                  Plaintiff,     | ORDER GRANTING PLAINTIFF'S
                                    MOTION FOR SUMMARY
9        vs.                       JUDGMENT AND DENYING
                                    DEFENDANT'S MOTION FOR
10  CAROLYN W. COLVIN,             SUMMARY JUDGMENT

11  Acting Commissioner of Social Security,   | ECF Nos. 14, 18

12                 Defendant.

13       BEFORE THE COURT are the parties' cross-motions for summary

14  judgment.  ECF Nos. 14, 18.  The parties consented to proceed before a magistrate

15  judge.  ECF No. 7.  The Court, having reviewed the administrative record and the

16  parties' briefing, is fully informed.  For the reasons discussed below, the Court

17  grants Plaintiff's motion (ECF No. 14) and denies Defendant's motion (ECF No.

18  18).

19                        **JURISDICTION**

20       The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

Page 1

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The

Page 2

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. *Id*. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. *Id*. § 416.920(b). But, when a person received benefits as a child and the

Commissioner is redetermining the person's eligibility because he or she turned

18-years old, step-one does not apply. 20 C.F.R. § 416.987(b).

At step two, the Commissioner considers the severity of the claimant's

impairment. *Id*. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment

or combination of impairments which significantly limits [his or her] physical or

mental ability to do basic work activities," the analysis proceeds to step three. *Id*.

§ 416.920(c). If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. *Id*. § 416.920(a)(4)(iii). If

the impairment is as severe, or more severe, than one of the enumerated

impairments, the Commissioner must find the claimant disabled and award

benefits. *Id*. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity

("RFC"), defined generally as the claimant's ability to perform physical and

mental work activities on a sustained basis despite his or her limitations, *id*. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). *Id*. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. *Id*. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. *Id*. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id*. If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. *Id*. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r, of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

Page 5

## ALJ'S FINDINGS

Plaintiff received Supplemental Security Income ("SSI") benefits as a child due to asthma and a cognitive disorder.  Tr. 16.  The Social Security Administration ("Administration") reconsidered, as it must, Plaintiff's eligibility to receive benefits when he attained 18 years of age.  42 U.S.C. § 1382c(a)(3)(H)(iii).  Under the rules for adults, Plaintiff's application was denied initially, Tr. 31-35, and upon reconsideration, Tr. 37-45.  Plaintiff appeared for a hearing before an administrative law judge (ALJ) on May 10, 2013.  Tr. 298-319.

The ALJ skipped step one because it is not relevant in age-18 disability redeterminations.  Tr. 17; 20 C.F.R. § 416.987(b); *Zavalin v. Colvin*, 778 F.3d 842 844 (9th Cir. 2015).  At step two, the ALJ found Plaintiff suffers from the following severe impairments: cognitive disorder, borderline intellectual functioning, major depressive disorder, and generalized anxiety disorder.  Tr. 18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 20.  The ALJ then concluded that the Plaintiff had the RFC to perform a full range of work at all exertional levels, with some nonexertional limitations.  Tr. 22.  At step four, the ALJ found Plaintiff had no past relevant work.  Tr. 28.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that

Plaintiff could perform, such as hand packager, bagger, and vehicle cleaner.  Tr. 28.  On that basis, the ALJ concluded that, since October 31, 2010, Plaintiff was not disabled as defined in the Social Security Act.  Tr. 29.

On November 25, 2014, the Appeals Council denied review, Tr. 3-5, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him SSI benefits under Title XVI of the Social Security Act.  ECF No. 14. Plaintiff raises two issues for review:

1. Whether the ALJ properly concluded that Plaintiff did not meet Listing 12.05C; and

2. Whether the ALJ properly discredited Plaintiff's symptom claims.

1

**DISCUSSION**

2    **A. Listing 12.05C**

3        Listing 12.05 describes symptoms a claimant must establish to be

4    considered intellectually disabled.  To meet Listing 12.05, a claimant must satisfy

5    the diagnostic description of "intellectual disability" in the introductory paragraph

6    to 12.05 and any one of four sets of criteria (paragraphs A through D).  20 C.F.R.

7    Pt. 404, Subpt. P, App. 1, § 12.00A.

8        A claimant satisfies Listing 12.05C, demonstrating "intellectual
         disability" and ending the five-step inquiry, if he can show: (1)
9        subaverage intellectual functioning with deficits in adaptive
         functioning initially manifested before age 22; (2) a valid IQ score of
10       60 to 70; and (3) a physical or other mental impairment imposing an
         additional and significant work-related limitation.

11   *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing 20 C.F.R. pt. 404,

12   subpt. P, app. 1, § 12.05C).

13       1. <u>IQ Score</u>

14       Here, the ALJ found that Plaintiff did not meet or equal Listing 12.05B or

15   12.05C because the ALJ concluded that Plaintiff had a full-scale IQ score of 70.

16   Specifically, the ALJ found:

17       As for the "paragraph B" criteria, they are not met because the
         claimant does not have a valid verbal, performance, or full scale IQ of
18       59 or less.  A February 2004 school evaluation shows that **claimant
         has a full-scale IQ score of 70** (citing Tr. 104-05).  Finally, the
19       "paragraph C" criteria of listing 12.05 are not met because the
         claimant does not have a valid verbal, performance, or full scale IQ of
20

60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function **when his full-scale IQ score is 70** (citing Tr. 104-05).

Tr. 22 (emphasis added).  The finding is not supported by the record.  The parties agree that Plaintiff never scored 70 on any of his IQ tests.

Plaintiff contends the record demonstrates that he is entitled to benefits.  As evidence, Plaintiff directs the Court's attention to his 2000 and 2004 Performance IQ scores below 70.  ECF No. 14 at 10 (citing Tr. 105, 252).  He notes he took these test before he turned 22, and the ALJ's other findings establish that he meets the third prong of Listing 12.05C (*i.e.*, he suffers from severe mental impairments that significantly limit his ability to work).  ECF No. 14 at 10-11.  Defendant contends that Plaintiff's scores from 2000 and 2004 are invalid, citing 20 C.F.R. Part 404, Subpart P, App. 1 §112.00D(10) (IQ scores for ages 7-16 are considered current for two years), and requests that this Court affirm the ALJ's denial of benefits.

The ALJ may have intended to find the Plaintiff's prior IQ scores invalid. Plaintiff scored a Performance IQ below 70 in 2000 and 2004, when he was 8 and 12-years old.  Tr. 105, 252; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C); *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1056 (C.D. Cal. 2010); *see also Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008) ("We do not doubt that an ALJ can decide that an IQ score is invalid.").  But an ALJ may only reject an

Page 9

IQ score for specific and legitimate reasons.  *Gomez*, 695 F. Supp. 2d at 1056 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)).  Based on this record, including the ALJ's misstatement of Plaintiff's IQ score and the ALJ's failure to set forth specific and legitimate reasons to discount the validity of the 2000 and 2004 IQ scores, this Court cannot discern the ALJ's intent.

A reviewing court may not usurp the administrative law judge's fact-finding function.  *See* 42 U.S.C. §405(b)(1); *see also Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 882 (9th Cir. 2006) (reviewing court may not substitute its judgment for that of the ALJ); *Bray v. Comm'r, of Soc. Sec. Admin*., 554 F.3d 1219, 1225 (9th Cir.2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ . . . ."); *Johnson v. Heckler*, 741 F.2d 948, 952-53 (7th Cir. 1984) (finding magistrate judge exceeded his authority by determining the claimant's transferable skills when the ALJ failed to.).  Accordingly, this Court will not make this factual finding, in the first instance.

2. <u>Adaptive Deficits</u>

In the alternative, Defendant contends Plaintiff does not meet Listing 12.05(C) because medical opinion evidence and his daily activities show he did not have "deficits in adaptive functioning."  But the ALJ did not address whether the Plaintiff manifested deficits in adaptive functioning.  The Defendant's

reference to other portions of the ALJ's decision discussing medical opinion evidence and daily activities are post-hoc rationalizations to support the ALJ's decision.  This Court "may not affirm an ALJ on a ground upon which he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

### 3. Remedy

Remand is appropriate for further proceedings.  Where, as here, a court cannot determine whether a claimant met a disability listing, the appropriate remedy is remand.  *Wedge v. Astrue*, 624 F. Supp. 2d 1127, 1135 (C.D. Cal. 2008); s*ee also, e.g.*, *Thresher*, 283 F. App'x at 475 (remanding for further proceedings because the ALJ's decision failed to make clear the nature of the considerations applied at step 3 and, particularly, precisely what was decided and why); *Schuler v. Astrue*, No. CV 09-2126-PLA, 2010 WL 1443892, at *5 (C.D. Cal. Apr. 7, 2010) (remand is warranted to address this apparent inconsistency in the ALJ's decision); *Jackson v. Astrue*, 2008 WL 5210668, at *5 (C.D. Cal. December 11, 2008) (remand necessary where the ALJ failed to resolve the apparent inconsistency between his findings).  On remand, the ALJ should specify on what grounds the ALJ determined Plaintiff did not meet Listing 12.05(C).

**B. Adverse Credibility Finding**

Plaintiff next faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims.  ECF No. 14 at 12-17.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." [1]  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).  "General

---

[1] In his reply brief, Plaintiff contends for the first time that the ALJ relied on the substantial evidence standard to discredit him.  ECF No. 19 at 3-5.  Since he did

Page 12

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r, of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

not raise this challenge in his opening brief, Plaintiff waived the contention. *See Bray*, 554 F.3d at 1226 n.7. Regardless, Plaintiff's contention has no merit. ALJs do not apply the substantial evidence standard, reviewing courts do. 42 U.S.C. § 405(g).

Page 13

Here, the ALJ discounted Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms because (1) his daily activities were inconsistent with the debilitating symptoms he alleged; (2) objective medical evidence does not substantiate his testimony; (3) he chose not to seek medical treatment; and (4) he lacked motivation to seek work. Tr. 24-25.

1.  Daily Activities

The ALJ found Plaintiff engaged in daily activities that were inconsistent with his subjective complaints. Tr. 24. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn*, 495 F.3d at 639; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). Plaintiff cautions this Court against combing the administrative record to supplement the ALJ's general, unspecified conflict between his daily activities and remaining limitations he alleges. ECF No. 14 at 15 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)). The ALJ decision requires no supplement.

Page 14

Plaintiff alleged low motivation, difficulty getting along with others, and cognitive problems.[2] Tr. 23. The ALJ laid out numerous daily activities that contradict the Plaintiff's testimony. In July 2010, Plaintiff reported attending school and planned to attend college. Tr. 24 (citing Tr. 149). The record shows he takes care of his own hygiene, dogs, household chores, and homework. Tr. 24 (citing Tr. 39, 71-72, 74). Plaintiff reported an active social life, including independently attending school functions, like dances, going to movie theaters, shopping, and camping. Tr. 24 (citing Tr. 73-74, 149). Plaintiff worked part-time at a fast food restaurant and as a babysitter for a toddler, which the ALJ noted is particularly demanding both physically and emotionally. Tr. 24 (citing Tr. 149, 304-305). Plaintiff's daily activities sharply contrast with the sort of debilitating limitations that would render a person incapable of working. Moreover, they are inconsistent with his claimed functional limitations.

Plaintiff contends his social activities should not adversely affect his credibility because those activities, unlike work activities, are self-directed and provide him the flexibility to take breaks and schedule his tasks. ECF No. 14 at 14

---

[2] Plaintiff also alleged anxiety attacks, but the ALJ accounted for Plaintiff's anxiety in his RFC by limiting his interaction with coworkers and the public. Tr. 22.

Page 15

(citing *Garrison*, 759 F.3d at 1016).  *Garrison* is inapposite here.  The fact that Plaintiff self-directs activities frequently (i.e., his active social life) contradicts his testimony that he suffers from low motivation and does not get along well with others.

Plaintiff contends his work history should not adversely affect his credibility either.  First, Plaintiff contends his part-time work history does not establish he could meet the greater physical, mental, and emotional demands of full-time work.  Here, at the time Plaintiff was working part-time, he was also attending school part-time, which he did for about a year.  Tr. 149.  Those activities, coupled together, are sufficiently comparable to full-time work.  The ALJ did not error in relying on this factor in the credibility determination.

Second, Plaintiff contends his short stints at part-time work evidence an inability to sustain employment long-term and should not be relied on to discredit him.  In support of his contention, he cites *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007).  In *Lingenfelter*, the Court reasoned "[i]t does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." 504 F.3d at 1038 (emphasis in original).  Unlike *Lingenfelter*, Plaintiff did not fail

1  because of any recognized impairment.  The ALJ could properly reject his

2  testimony based on his part-time work history.

3       Last, even excluding Plaintiff's social and work activities, Plaintiff's

4  attendance at school and plan to attend college demonstrate he has sufficient

5  motivation, cognitive faculties, and ability to get along with people to work.

6  These inconsistencies between Plaintiff's daily activities and the limitations he

7  alleges constitute specific, clear, and convincing reasons for rejecting Plaintiff's

8  testimony.

9      2.  <u>Medical Evidence</u>

10       The ALJ discredited the Plaintiff because "objective findings and

11  independent testing do not support the claimant's alleged limitations."  Tr. at 24.

12  An ALJ may rely on medical evidence to assess the intensity and persistence of a

13  claimant's symptoms.  20 C.F.R. § 416.929(c)(2)-(c)(4).  But, an ALJ may not

14  disregard a claimant's testimony solely because it is not affirmatively

15  substantiated by objective medical evidence.  *Robbins*, 466 F.3d at 883.  Here, the

16  ALJ found Plaintiff's treatment records did not support the severity of cognitive

17  deficits he alleged.  Tr. 24-25.  Objective testing consistently demonstrated intact

18  cognitive functioning.  *Id.*  School psychologists thought Plaintiff performed well

19  enough to remove him from special education classes.  Tr. 105.  In 2010, Dr. Jay

20  Toews evaluated Plaintiff and found he could spell the word "WORLD" forwards

Page 17

and backwards, count backwards by 3's, define common proverbs, and recall four

out of four words immediately and after a seven to eight-minute delay.  Tr. 150.

Dr. Toews opined that Plaintiff could sustain attention and concentration and

remember multi-step and mildly complex information.  Tr. 150.

Since the ALJ relied on the lack of objective medical evidence in evaluating

the severity of Plaintiff's alleged limitation, in addition to other permissible

reasons to discredit Plaintiff, the ALJ did not err.

3. Medical Treatment

Third, the ALJ discredited Plaintiff for not being under the care of a doctor

for any medical condition and for seeking little mental health treatment.  Tr. 24-

25.  Generally, "'unexplained, or inadequately explained, failure to seek treatment'

may be the basis for an adverse credibility finding unless one of a 'number of good

reasons for not doing so' applies."  *Orn*, 495 F.3d at 638 (quoting *Fair*, 885 F.2d

at 603); *see also Molina,* 674 F.3d at 1113.  One good reason for failing to seek

treatment is lack of financial resources.  An ALJ may not reject a claimant's

testimony because a lack of funds prevented him from seeking treatment.  *Orn*,

495 F.3d at 638; *see also Regennitter v. Comm'r, of Soc. Sec. Admin.*, 166 F.3d

1294, 1299-1300 (9th Cir. 1999); *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.

1995).  In the instant case, as the Plaintiff explained, he could not afford treatment

since he lost his SSI benefits.  Tr. 307.

The Defendant attempts to undermine Plaintiff's by contending that Plaintiff did not receive any psychiatric care in July 2010 when he was still receiving SSI benefits and because Plaintiff chose not to pursue free or low-income medical services. ECF No. 18 at 7-8 (citing Tr. 25, 148). But nothing in the record suggests free or low-income medical services are available to the Plaintiff. This was not a clear and convincing reason to discredit Plaintiff.

However, this error is harmless because the remaining reasoning and ultimate credibility finding is adequately supported by substantial evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### 4. Lack of Motivation

The ALJ discredited Plaintiff, finding that he lacked motivation and an urgency to find work. Tr. 25. Evidence of lack of motivation or self-limiting behaviors is a valid reason to discount a claimant's credibility. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001). Here, the ALJ noted that in a July 2010 evaluation, Dr. Toews recommended that Plaintiff become involved with Department of Vocational Rehabilitation (DVR) in a school transition program during his senior year in high school. Tr. 25 (citing Tr. 151). Dr. Toews opined that, with training, Plaintiff could probably acquire the skills to work successfully in small engine repair. Tr. 25 (citing Tr. 152). Plaintiff did not follow up on that suggestion. The ALJ further discussed this possibility with Plaintiff at the

Page 19

hearing, and left the record open for Plaintiff to have an opportunity to contact

DVR.  Tr. 25, 317.  Again, Plaintiff did not follow up.  Tr. 25.  The ALJ concluded

that Plaintiff's ongoing support from his family "raises some questions as to

whether his current unemployment is truly the result of the alleged medical

problems or simply a lifestyle choice."  Tr. at 25.  The ALJ's interpretation of the

evidence is reasonable and this is therefore a clear and convincing reason

supporting the ALJ's credibility determination.

In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

specific, clear, and convincing reasons to discredit Plaintiff's testimony.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of

legal error.  The matter must be remanded for reconsideration of whether Plaintiff

meets Listing 12.05.  On remand, the ALJ should clarify the record and the ALJ's

finding with respect to Plaintiff's IQ scores.

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(ECF No. 14)** is

**GRANTED** and the matter is remanded to the Commissioner for

additional proceedings pursuant to sentence four.  42 U.S.C. § 405(g).

2.   Defendant's Motion for Summary Judgment **(ECF No. 18)** is

**DENIED.**

3.    An application for attorney's fee may be filed by separate motion.

The District Court Executive is directed to file this Order, enter

**JUDGMENT FOR THE PLAINTIFF**, **REMAND THE CASE FOR**

**FURTHER PROCEEDINGS,** provide copies to counsel, and **CLOSE** the file.

DATED this 31st day of March 2016.

*S/ Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE